Filed 7/18/23  P. v. Crowder CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LAKISA NICHELLE CROWDER,<br><br>    Defendant and Appellant. | G061505<br><br>(Super. Ct. No. 14NF2777)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed.

Alex Kreit, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

We appointed counsel to represent LaKisa Nichelle Crowder on appeal. Counsel filed a brief that set forth the facts of the case. Counsel did not argue against his client but advised the court he found no issues to argue on her behalf.

Counsel advised the court the applicable law in this case is *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), and the procedures set forth in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), do not apply to this case. (*Delgadillo, supra*, 14 Cal.5th at p. 231.) Thus, when appointed appellate counsel finds no viable issues, counsel should file a brief informing the court that counsel has found no arguable issues and including a concise recitation of facts relating to the denial of the petition. (*Ibid.*) The reviewing court should send the brief to the defendant with notice that the defendant has the right to file a supplemental brief or letter within 30 days, and if no brief or letter is filed, the appeal may be dismissed. (*Id.* at pp. 231-232.) If the defendant fails to file a supplemental letter or brief, the court retains discretion to conduct an independent review of the record in any particular Penal Code section 1172.6[1] appeal. (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.) We agree.

On February 7, 2023, counsel was directed to send the record of this appeal and a copy of appellant's brief to appellant immediately. Crowder was granted 30 days to file any supplemental brief deemed necessary. Crowder was advised if no such supplemental brief is filed the court may dismiss the appeal as abandoned. (*Delgadillo, supra,* 14 Cal.5th at p. 216.) More than 30 days passed, and Crowder failed to file a supplemental brief or letter. We exercise our discretion to review the record.

---

[1] Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) For purposes of clarity, we refer to the statute as section 1172.6 throughout the opinion. All further statutory references are to the Penal Code, unless otherwise indicated.

To assist the court in conducting a discretionary independent review of the record, counsel provided the court with one issue—did the trial court err when it found Crowder ineligible for resentencing pursuant to section 1172.6. (*Anders, supra,* 386 U.S. at pp. 744-745.)

We have independently reviewed the record. We found no arguable issues on appeal. We affirm the postjudgment order.

FACTS

The facts are taken from our prior nonpublished opinion, *People v. Crowder* (Jan. 24, 2017, G051851) (*Crowder*).

"At Kerry Boagni's request, Crowder arranged to have Boagni loan his sports utility vehicle (SUV) to two men in exchange for crack cocaine or money. The men provided Boagni with drugs or cash on three or four nights but then stopped. Boagni was concerned, wanted his SUV back, and told Crowder he would call the police if the men did not return his SUV.

"Days later, the men informed Boagni that Crowder was going to return his SUV. Crowder told Boagni to meet her at a store. One evening, Boagni's fiancée drove him to the designated meeting place. When they got there, Crowder was sitting in the SUV's driver's seat, and Cornell Davis was sitting in the backseat. Crowder told Boagni that Davis was her cousin, and she asked Boagni to drive them to her grandmother's house in Cypress. Boagni, willing to do anything to get his SUV, agreed.

"Boagni got into the front passenger seat, and Crowder drove for about 50 minutes. When they passed Cypress, he asked why they were not getting off the freeway, and Crowder said she was not going to tell him 'exactly' where she lived. At some point during the drive, Crowder said to Davis, "'[I]t will be a long walk home."'

"When Crowder exited the freeway, she pointed to a street where she claimed her grandmother lived. Crowder told Boagni that she needed to buy a couple

3

things, and she drove to the back parking lot of a Target in Anaheim Hills. Crowder got out and removed personal items from the SUV. Boagni got out and saw clothing on the back seat. As Boagni started to say they left something, Davis shot Boagni in the face. Boagni stumbled to some nearby bushes, and Davis followed him. Davis attacked Boagni, and as they fought, something fell to the ground. When Davis went to retrieve the item, Boagni fled. Boagni called 911 and ran to a market where he collapsed. After a man helped Boagni, an ambulance arrived and took him to the hospital.

"Crowder and Davis fled in the SUV. Law enforcement officers pursued them on the freeway, but Crowder refused to stop and led officers on a high-speed chase weaving through evening traffic until she crashed into a guardrail. Crowder got out of the SUV and ran[. A]n officer and a police canine dog [pursued her when she refused] to stop. Crowder ran off the freeway, through a park, and into a residential area where first the dog and then the officer apprehended Crowder."

"At trial, Crowder testified she was the 'middleman' between Boagni and Andre Elliot, a childhood friend who she knew was a gang member, drug dealer, and pimp. Crowder explained Elliot picked her up and offered her $100 to return Boagni's SUV. She was reluctant to drive the SUV because it was 'riddled with bullet holes' and Boagni's items were missing, but Elliot assured her that she would be safe. Elliot drove Crowder to a motel, Davis got in the SUV, and Elliot got out of the SUV. Crowder had not met Davis before that day. Elliot told her that Davis was a friend or associate, but he did not tell her Davis's name. Elliot told her where to meet Boagni, to drive on the 91 freeway to Cypress, and to drive back to Compton with Boagni. Crowder stated she did not know Davis had a gun, she was not suspicious of him, and they did not discuss harming Boagni.

"When Crowder arrived at the designated meeting place, she asked Boagni if they could drop off Davis and then return to Compton together. Boagni agreed. She

4

denied telling Boagni that Davis was her cousin. Boagni let Crowder drive and got into the front passenger seat. She and Boagni talked during the drive. She tried to drive to Cypress, but she passed it and exited the freeway in Anaheim Hills because she was low on gas, and she needed to purchase food and feminine hygiene products. She parked in the back of Target because she was unfamiliar with the store and mistakenly believed it was the customer parking lot and not part of a plan to shoot Boagni.

"Crowder denied telling Davis, 'It's going to be a long . . . walk home.' She further denied pointing out her grandmother's house to Boagni. After she parked, Crowder began cleaning out the SUV. Boagni got out and walked around the front of the SUV. She did not hear Boagni say anything, and she did not see Davis. As she leaned into the SUV to retrieve her cell phone, she heard a gunshot. She touched her head because she thought she had been shot.

"Crowder got back into the SUV because she was scared and panicked. After Davis got in the SUV, she drove away and stopped in a cul-de-sac so that Davis could 'clean up' and she could make a telephone call. Crowder got back on the freeway because she wanted to go home. She intended to abandon the SUV on her way home. Elliott called her and told her that he was down the freeway. When police started pursuing her, she did not stop because she was very close to her exit, she wanted to go home, and she was worried police would shoot her. After she crashed, she ran because she was scared of the darkness on the freeway[,] and she was afraid police would shoot her. She could not hear the canine warnings because of the sirens and police helicopter.

"On cross-examination, Crowder was questioned about an interview with a detective after the shooting[. S]he testified she could not remember [the interview] because she was heavily medicated at the time. Crowder failed to tell the detective about Elliott or that she needed to purchase feminine hygiene products. But she did tell the detective she had known Davis for years and referred to him as 'CJ.' Crowder agreed,

5

however, she provided accurate identifying information in her interview as well as information that was consistent with Boagni's testimony. Crowder insisted she had no reason to harm or kill Boagni, she did not plan to do so, and she was not involved in the shooting."

The trial court instructed the jury with CALCRIM No. 400, which outlines the general principles of aiding and abetting liability, and CALCRIM No. 401, which outlines aiding and abetting principles for intended crimes. The court did not instruct the jury on the natural and probable consequences doctrine (CALCRIM Nos. 402 & 403).

"[The] jury convicted Crowder of deliberate and premeditated attempted murder (§§ 664, subd. (a), 187, subd. (a)), carjacking (§ 215, subd. (a)), and evading while driving recklessly (Veh. Code, § 2800.2), and found true a firearm enhancement (§ 12022, subd. (d)). The trial court sentenced Crowder to life in prison with the possibility of parole for attempted murder plus one year for the firearm enhancement. In 2017, we affirmed the judgment." (*Crowder, supra*, G051851.)

In 2019, Crowder filed a petition for resentencing pursuant to section 1172.6. The trial court denied the petition. We affirmed. (*People v. Crowder* (Mar. 26, 2020, G058190) [nonpub. opn.].)

In January 2022, Crowder filed another petition for resentencing pursuant to section 1172.6. The trial court held a hearing on the petition, where Crowder's counsel waived her appearance.

The trial court denied the petition, finding Crowder had not established a prima facie case of eligibility. The court noted, "I remember this case, and I remember how it was instructed, and . . . Crowder went down on the attempted murder as a straight aider and abettor which required an intent to kill for the attempted murder." The court indicated the jury was never instructed with CALCRIM 402 or CALCRIM 403, which

6

dealt with the doctrine of natural and probable consequences. The court also noted "this case did not involve felony murder." Crowder filed a timely notice of appeal.

DISCUSSION

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (SB 1437) amended sections 188 and 189, effective January 1, 2019, to eliminate natural and probable consequences liability for murder, and to limit the scope of the felony-murder rule. (*People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*).) Under sections 188 and 189, as amended, murder liability can no longer be "imposed on a person who [was] not the actual killer," who "did not act with the intent to kill," or who "was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *Lewis, supra,* 11 Cal.5th at p. 959.) SB 1437 also added section 1172.6 which, as originally enacted, set forth a procedure whereby a "person convicted of felony murder or murder under a natural and probable consequences theory" could petition for resentencing relief. (Stats. 2018, ch. 1015, § 4.)

Senate Bill No. 775 (2021-2022 Reg. Sess.) (SB 775), effective January 1, 2022, amended section 1172.6, subdivision (a), to expand the individuals entitled to petition for resentencing. (Stats. 2021, ch. 551, § 1, subd. (a).) Subdivision (a) of section 1172.6 now expressly permits individuals convicted of attempted murder or manslaughter under a natural and probable consequences theory to file a petition for resentencing relief. A section 1172.6 petition is required to make "'a prima facie showing' for relief. [Citation.]" (*Lewis, supra,* 11 Cal.5th at p. 960.) In *Lewis,* our Supreme Court held, "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971.) To be eligible for relief under section 1172.6, the petitioner must make a prima facie showing that he or she "could not

7

presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).)

Here, the trial court correctly denied Crowder's petition because the record revealed she was convicted on a theory of murder that remains valid notwithstanding SB 1437's amendments to sections 188 and 189. (*People v. Estrada* (2022) 77 Cal.App.5th 941, 945-946.) Specifically, the jury instructions given at trial established that Crowder was convicted of attempted murder as a direct aider and abettor. She could not have been convicted under a felony-murder theory or the natural and probable consequences doctrine for the simple reason that the jury was not instructed on either of these theories. We find no error.

We have reviewed the record pursuant to *Wende, supra,* 25 Cal.3d 436, and *Anders, supra,* 386 U.S. 738, and considered the possible issue raised by counsel. We found no arguable issues on appeal.

DISPOSITION

The postjudgment order is affirmed.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

SANCHEZ, J.

8